UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EMILIO FUSCO )<br>  Petitioner )<br> )<br>  v. )<br> )<br>UNITED STATES OF AMERICA )<br>  Respondent | CIVIL NO. 04-30193-MAP |

**GOVERNMENT'S OPPOSITION TO EMILIO FUSCO'S MOTION FOR
POST-CONVICTION RELIEF PURSUANT TO 28 U.S.C. § 2255**

The United States of America, by Michael J. Sullivan, United States Attorney for the District of Massachusetts, submits the following opposition to Emilio Fusco's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255.

**Procedural Background**

On December 20, 2000, a federal grand jury indicted Fusco and seven other defendants on racketeering and related charges arising out of a gambling and loan-sharking conspiracy operated by the Springfield branch of the Genovese crime family. [D. 10].[1] On June 4, 2003, Fusco pled guilty to racketeering and money laundering under a plea agreement with the government. [D. 422, 425].[2] In the plea agreement, Fusco agreed that his combined adjusted offense level, before consideration of acceptance of responsibility, was 23, based on his plea to Count One of a

---

[1] The docket references in this memorandum are to the Criminal Docket in No. 00-30036.

[2] The transcript of the plea hearing is attached to the 2255 petition.

Superceding Information[3] and Count 24 of the Superceding Indictment, and application of a two-level enhancement for his aggravating role in the offense. The defendant also waived his right to collaterally challenge his sentence except under certain narrow circumstances.[4] On September 19, 2003, the court sentenced Fusco to 33 months imprisonment to be followed by three years of supervised release. The Judgment in a Criminal Case was entered on September 25, 2003. [D. 495].[5]

Fusco did not appeal from the conviction, but on September 20, 2004, filed a motion to vacate, set aside or correct his conviction and sentence pursuant to 28 U.S.C. § 2255.

### Summary of the Petitioner's Argument

Relying upon <u>Blakely</u> v. <u>Washington</u>, 124 S. Ct. 2531 (2004), Fusco contends that his sentence is illegal because it was imposed in violation of his Sixth Amendment right to have a jury find beyond a reasonable doubt any fact used to increase his sentence. He also argues that his plea waivers were not knowing or voluntary due to ineffective assistance of counsel.

As discussed in more detail below, Fusco's petition should be dismissed for the following reasons. First, <u>Blakely</u> does not

---

[3] The defendant also waived indictment as to the charge contained in the Superceding Information.

[4] The plea agreement is attached as Exhibit 1.

[5] The transcript of the sentencing hearing is attached to the 2255 petition.

apply retroactively to the 2255 petition.  Second, the petitioner's failure to pursue these issues on direct appeal precludes him from seeking habeas corpus relief.  Third, <u>Blakely</u> does not impact Fusco's sentence.

## Argument

### I. <u>Blakely</u> does not apply retroactively to this case.

The petition lacks merit because the petitioner's conviction was final when the Supreme Court decided the <u>Blakely</u> case.  The Supreme Court has long held that new constitutional decisions generally do not apply to proceedings that had been completed when the new decisions were rendered.  <u>See</u> <u>Allen</u> v. <u>Hardy</u>, 478 U.S. 255 (1986) (jury selection rule of <u>Batson</u> v. <u>Kentucky</u>, 476 U.S. 79 (1986), not applicable to cases on collateral review); <u>Solem</u> v. <u>Stumes</u>, 465 U.S. 638 (1984) (custodial interrogation rule of <u>Edwards</u> v. <u>Arizona</u>, 451 U.S. 477 (1984), not applicable to cases on collateral review); <u>Michigan</u> v. <u>Payne</u>, 412 U.S. 47 (1973) (prophylactic sentencing rule of <u>North Carolina</u> v. <u>Pearce</u>, 395 U.S. 711 (1969), not retroactive); <u>Halliday</u> v. <u>United States</u>, 394 U.S. 831 (1969) (guilty plea acceptance rule of <u>McCarthy</u> v. <u>United States</u>, 394 U.S. 459 (1969), not retroactive); <u>Stovall</u> v. <u>Denno</u>, 388 U.S. 293 (1967) (identification procedure decisions of <u>United States</u> v. <u>Wade</u>, 388 U.S. 218 (1967), and <u>Gilbert</u> v. <u>California</u>, 388 U.S. 263 (1967), not retroactive); <u>Johnson</u> v. <u>New Jersey</u>, 384 U.S. 719 (1966) (interrogation rules of <u>Escobedo</u> v.

Illinois, 378 U.S. 478 (1964), and Miranda v. Arizona, 384 U.S. 436 (1966), not retroactive); Tehan v. Shott, 382 U.S. 406 (1966) (Griffin v. California, 380 U.S. 609 (1965), rule against commenting on defendant's failure to testify not retroactive); Linkletter v. Walker, 381 U.S. 618 (1965) (exclusionary rule of Mapp v. Ohio, 367 U.S. 643 (1961), not retroactive). See also Teague v. Lane, 489 U.S. 288, 303 (1989) ("new rules should always be applied retroactively to cases on direct review, but that generally they should not be applied retroactively to criminal cases on collateral review.").

The principle of non-retroactivity is subject to only two narrow exceptions. First, a new rule should be applied to cases on collateral review if it places "certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe." Id. at 311. Second, a new rule should be applied retroactively if it implicates fundamental fairness in a way that seriously affects the likelihood of an accurate conviction. Id. at 312-13.[6]

"The Teague inquiry is conducted in three steps." O'Dell v. Netherland, 521 U.S. 151, 156 (1997). The first step is to determine whether the defendant's conviction became final prior

---

[6] The Supreme Court, despite many decisions addressing new rules of constitutional law, has yet to find any retroactive under the Teague rule. See Levan v. United States, 128 F. Supp. 2d 270, 277-78 (E.D. Pa. 2001) (collecting cases).

4

to the new decision he invokes. If not, the defendant is entitled to the benefit of the decision. If so, the second step is to determine whether the decision adopts a new rule. If not, the defendant is entitled to the benefit of the decision. If the decision did adopt a new rule, the third step is to determine whether one of the two narrow exceptions applies. If either exception applies, the defendant is entitled to the benefit of the new decision. If neither exception applies, the defendant is not entitled to the benefit of the decision.

In this case, it is undisputed that the petitioner's conviction became final before June 24, 2004, the date of the Blakely decision.[7] Thus, the inquiry moves to the second step determination of whether Blakely adopted a new rule.

A "new rule" is one that was not "_dictated_ by precedent existing at the time the defendant's conviction became final." Graham v. Collins, 506 U.S. at 467; Sawyer v. Smith, 497 U.S. 227, 234 (1990); Teague v. Lane, 489 U.S. at 301 (emphasis in originals). A rule may be new even though it finds general support in prior cases. Sawyer v. Smith, 497 U.S. at 236. If a reasonable jurist would not have felt compelled to adopt the rule subsequently announced in Blakely, it is a new rule. O'Dell v.

---

[7] A conviction is final when appeal is exhausted, including the expiration of the time period for petitioning for certiorari. Derman v. United States, 298 F.3d 34 (1st Cir. 2002). In this case, where the defendant did not file an appeal, the conviction was final ten days after the judgment of conviction.

5

Netherland, 521 U.S. at 164; Graham v. Collins, 506 U.S. at 477. Under this standard, Blakely adopted a new rule.

Four years before Blakely, in Apprendi, the Court held that any fact which increases a statutory maximum sentence must be determined by a jury. Subsequently, every federal appeals court addressing the issue found the Apprendi rule inapplicable to the Sentencing Guidelines as long as the final sentence did not exceed the statutory maximum sentence on any count of conviction.[8] Thus, even if the 5-4 decision in Blakely is ultimately held to require jury determinations regarding every enhancement factor under the federal guidelines, that result is not "dictated" by the Apprendi precedent. Simpson v. United States, 376 F.3d 679, 681 (7th Cir. 2004) (stating that Blakely is a new rule).

Because Blakely constitutes a new rule of procedure, the inquiry turns to the final question: whether it is subject to either of the exceptions outlined in Teague for new substantive

---

[8] See, e.g., United States v. Casas, 356 F.3d 104, 128 (1st Cir. 2004); United States v. Luciano, 311 F.3d 146, 153 (2d Cir. 2002); United States v. Parmelee, 319 F.3d 583, 592 (3d Cir. 2003); United States v. Cannady, 283 F.3d 641, 649 & n.7 (4th Cir. 2002); United States v. Floyd, 343 F.3d 363, 372 (5th Cir. 2003); United States v. Tarwater, 308 F.3d 494, 517 (6th Cir. 2002); United States v. Merritt, 361 F.3d 1005, 1015 (7th Cir. 2004); United States v. Banks, 340 F.3d 683, 684-65 (8th Cir. 2003); United States v. Ochao, 311 F.3d 1133, 1134-36 (9th Cir. 2002); United States v. Mendez-Zamora, 296 F.3d 1013, 1020 (10th Cir. 2002); United States v. Ortiz, 318 F.3d 1030, 1039 (11th Cir. 2003); United States v. Pettigrew, 346 F.3d 1139, 1147 n.18 (D.C. Cir. 2003).

rules which change the definition of criminal conduct, or for "watershed" rules addressed to matters of fundamental fairness. The answer to that inquiry is "no."

First, the rule announced in Blakely is procedural, not substantive. See Schriro v. Summerlin, 124 S. Ct. 2519 (2004). The Summerlin Court was faced with determining whether Ring v. Arizona, 536 U.S. 584 (2002), applied retroactively. Ring held that aggravating factors supporting the death penalty must be presented to a jury. Summerlin held that Ring presented a new rule of procedure, which was not retroactively applicable under the Teague formulation. In a statement directly applicable to Blakely, the Court concluded, "rules that regulate only the *manner of determining* the defendant's culpability are procedural." Id. (emphasis in original). The Summerlin Court also rejected the defendant's contention that the procedural rule was a "watershed" rule demanding retroactive application. Id. at 2525.

The same principles the Summerlin Court used to deny retroactive application to Ring dictate that the Blakely holding should not be given retroactive effect. Both rules (Ring and Blakely) require that a jury determine the existence of aggravating factor beyond a reasonable doubt. See In re Dean, 375 F.3d 1287, 1290 (11th Cir. 2004) ("the Supreme Court has

strongly implied that <u>Blakely</u> is not to be applied retroactively").

In conclusion, Fusco is precluded from raising a claim under <u>Blakely</u> because his conviction became final prior to the <u>Blakely</u> decision and the petition should be dismissed.[9]

## II. The petition fails because the petitioner did not pursue a direct appeal of his sentence.

The petitioner lost any right to challenge his sentence under the Sixth Amendment because he failed to object at sentencing and present the issue on direct appeal. An issue may not be raised under Section 2255 if there was a full opportunity for the defendant to be heard during the trial phase and on direct appeal. If a defendant failed to raise an issue before the trial court and in a direct appeal, the issue is deemed "defaulted" and may not be raised under Section 2255 except under unusual circumstances. <u>United States</u> v. <u>Frady</u>, 456 U.S. 152 (1982)) (if a claim was not raised, it is procedurally defaulted and the habeas court will not adjudicate it absent countervailing equitable considerations (e.g., actual innocence or cause and prejudice). In this case, the defendant did not raise the

---

[9] In addition, in the plea agreement, Fusco waived any right to file a collateral challenge. The only exception to that waiver is for claims based on new legal principles held by the First Circuit or the Supreme Court to have retroactive effect, The new legal principle announced in <u>Blakely</u> has not been held to have retroactive effect. Therefore, Fusco has waived his right to collaterally challenge his sentence.

Blakely issue before the district court or on appeal. Accordingly, he defaulted that issue.

Addressing an analogous issue, the First Circuit has held that, with few exceptions, the lack of a timely objection bars relief. See, e.g., Derman v. United States, 298 F.3d 34, 44-46 (1st Cir. 2002).[10] In Derman, the defendant attacked his sentence under Apprendi v. New Jersey, 530 U.S. 466 (2000), which held that facts that increased a sentence beyond the statutory maximum must be proven to a jury.[11] Although Derman had appealed his conviction, his appeal did not challenge his sentence under Apprendi type principles. The court held that the defendant's failure to raise the Apprendi issue at trial and on direct appeal barred him from raising the issue in his 2255 petition even though Apprendi had not yet been decided at the time of his sentencing or appeal.

> The fact that Apprendi is available to [the defendant] (because his conviction was not het final when Apprendi was decided) does not

---

[10] All other courts of appeal to address the issue agree. United States v. Jenkins, 333 F.3d 151, 155 (3d Cir. 2003); United States v. Sanders, 247 F.3d 139, 144-46 (4th Cir. 2001); United States v. Smith, 241 F.3d 546, 548-49 (7th Cir. 2001); United States v. Moss, 252 F.3d 993, 1001-03 (8th Cir. 2001); United States v. Bailey, 286 F.3d 1219, 1221 (10th Cir. 2002); McCoy v. United States, 266 F.3d 1245, 1258 (11th Cir. 2001); United States v. Pettigrew, 346 F.3d 1139, 1144 (D.C. Cir. 2003).

[11] Apprendi was decided after Derman's appeal was rejected but before the 90 day period for petitioning for certiorari expired. Therefore, his conviction was not final and the Apprendi rule applied.

9

>      mean that he can take advantage of that
>      decision in practice; the rub is that he
>      failed either to object to the jury
>      instructions or to content the trial court's
>      sentencing determination on direct appeal.
>      These omissions transgress the general rule
>      that a criminal defendant must seasonably
>      advance an objection to a potential
>      constitutional infirmity in order to preserve
>      the point for collateral attack.

Id. at 44. The court rejected the petitioner's claim that procedural default should not apply because Apprendi was a "watershed" decision.

>      The inquiry into the applicability of the
>      procedural default rule is, for the most
>      part, black or white: either the defendant
>      proffered a timely objection or he did not.
>      While there are a few exceptions . . . the
>      subsequent announcement of a Supreme Court
>      ruling -- whether or not it blazes new trails
>      -- is not one of them.

Id. See also Sunal v. Large, 332 U.S. 174, 178 (1947).

A defendant who failed to raise an issue at trial or on direct appeal may pursue the claim under Section 2255 only if he demonstrates sufficient "cause" for the default and "prejudice" resulting from it. Bousley v. United States, 523 U.S. 614, 622 (1998). This doctrine applies directly to sentencing errors. United States v. Essig, 10 F.3d 968, 979 (3d Cir. 1993) ("§ 2255 is no longer a necessary stand-in for the direct appeal of a sentencing error because full review of sentencing errors is now available on direct appeal.").

Moreover, the narrow exceptions to procedural default do not apply to this case.

   1.   <u>Excuse based on change in law</u>.

A defendant cannot show cause for failing to challenge his sentence earlier simply because the <u>Blakely</u> decision was unavailable and represented a change in circuit law. A defendant may have good cause for failing to raise an issue only "where a constitutional claim is so novel that its legal basis is not reasonably available to counsel." <u>Reed</u> v. <u>Ross</u>, 468 U.S. 1, 16 (1984) (challenge to jury instruction which had been used in state without challenge for a century). However, this explanation is permitted only where counsel was foreclosed from raising the issue earlier; if the argument was permissible, even if likely futile, cause has not been established. <u>See</u> <u>Engle</u> v. <u>Isaac</u>, 456 U.S. 107, 132-33 (1982) (default was not excused by the likelihood that the claim would have been rejected; where it "cannot [be said] that respondents lacked the tools to construct their constitutional claim"). <u>See also</u> <u>Murray</u> v. <u>Carrier</u>, 477 U.S. 478 (1986) ("[T]he mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default.").

Here, the argument that the Sixth Amendment requires a jury determination on sentencing factors under certain circumstances

was available before the <u>Blakely</u> decision as evident from the fact that the defendant in <u>Blakely</u> pressed the issue. While the decision in <u>Apprendi</u> did not dictate the <u>Blakely</u> ruling, it foreshadowed it and outlined the pertinent legal doctrines. The fact that counsel may have overlooked or underestimated the issue does not constitute cause for default. The tools were available to construct the argument which prevailed in <u>Blakely</u>. <u>See also</u> <u>Bousley</u> v. <u>United States</u>, 523 U.S. 614 (1998) (challenge to interpretation of 18 U.S.C. § 924(c)(1), prior to the Court's decision in <u>Bailey</u> v. <u>United States</u>, 516 U.S. 137, 1611 (1995), was likely futile, but was available); <u>Smith</u> v. <u>Murray</u>, 477 U.S. 527 (1986) ("the question is not whether subsequent legal developments have made counsel's task easier, but whether at the time of the default the claim was 'available' at all").

    2.   <u>Excuse based on ineffective assistance of counsel</u>.

Similarly, a claim of ineffective assistance of counsel does not excuse the petitioner's earlier default of the <u>Blakely</u> issue. <u>United States</u> v. <u>Garth</u>, 188 F.3d 99, 107 (3d Cir. 1999); <u>United States</u> v. <u>Sanders</u>, 165 F.3d 248, 250 (3d Cir. 1999).

In order to establish an ineffective assistance of counsel claim, the petitioner must show (1) errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment; and (2) prejudice. <u>Strickland</u> v. <u>Washington</u>, 466 U.S. 668, 687 (1984). The proper measure of

attorney performance is reasonableness under prevailing professional norms:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.

Id. at 688 (citation omitted).

Where existing law at the time of counsel's decision did not completely support the claim, courts have found it well within the range of competent assistance for counsel to choose to focus on other issues, whether counsel consciously identified the existence of the claim or not. See e.g. Duncan v. Morton, 256 F.3d 189, 202-03 (3d Cir. 2001) (failure to object to jury instruction was not ineffective assistance of counsel where controlling law was not decided until after the trial, although earlier state Supreme Court decisions pointed in that direction); United States v. Mikalajunas, 186 F.3d 490, 493 (4th Cir. 1999) (with respect to sentencing enhancement, court held that "[c]ounsel's failure to pursue a basis for appeal by reason of a

13

mere miscalculation of the likelihood of success does not constitute constitutionally ineffective representation."); Pollard v. White, 119 F.3d 1430, 1436 (9th Cir. 1997) (counsel not ineffective in asserting the "better view" of the law at the time, "although the issue was not entirely clear"); United States v. Gaudet, 81 F.3d 585, 591 (5th Cir. 1996) (counsel was not ineffective for not presenting argument at sentencing because of his assessment of the law; claim of ineffectiveness cannot be based on subsequent judicial decision which had not yet been announced); Horne v. Trickey, 895 F.2d 497, 500 (8th Cir. 1990) ("In effect, Horne argues that his counsel should have realized that the Supreme Court was planning a significant change in the existing law, and that the failure to anticipate this change rises to the level of constitutional ineffectiveness. We repeatedly have been unwilling to hold attorneys to such a high standard."); Smith v. Murray, 477 U.S. 527 (1986) (counsel's failure to recognize the significance of a claim supported by later case law did not demonstrate constitutionally ineffective assistance of counsel); Honeycutt v. Mahoney, 698 F.2d 213, 216-17 (4th Cir. 1983) (even though new rule was "foreshadowed" by other Supreme Court and appellate decisions, counsel was not ineffective for failing to perceive the issue); Brunson v. Higgins, 708 F.2d 1353, 1358 (8th Cir. 1983) (counsel not ineffective for failing to raise challenge to jury panel which

14

was speculative based on case law at the time, even if other attorneys were raising the issue). Cf. Sistrunk v. Vaughn, 96 F.3d 666, 671 (3d Cir. 1996) (counsel not ineffective for failing to pursue on appeal a claim which was "doomed to failure" in advance of Supreme Court's reversal of prior ruling).

Before Blakely, every appellate court held that the Apprendi rule was inapplicable to the Sentencing Guidelines if the final sentence did not exceed the statutory maximum sentence on any count of conviction.[12] Thus, defense counsel reasonably would view the likelihood of pervailing on a Blakely-type argument as slim at best. Therefore, failure to raise the challenge was not constitutionally ineffective assistance and does not provide cause for the defendant's default.

In sum, the Blakely claim was sufficiently novel and uncertain to allow counsel's decision not to raise it but not so unavailable to establish cause for the failure to present it. Foreclosing habeas corpus relief in such circumstances rests on

---

[12] See, e.g., United States v. Casas, 356 F.3d 104, 128 (1st Cir. 2004); United States v. Luciano, 311 F.3d 146, 153 (2d Cir. 2002); United States v. Parmelee, 319 F.3d 583, 592 (3d Cir. 2003); United States v. Cannady, 283 F.3d 641, 649 & n.7 (4th Cir. 2002); United States v. Floyd, 343 F.3d 363, 372 (5th Cir. 2003); United States v. Tarwater, 308 F.3d 494, 517 (6th Cir. 2002); United States v. Merritt, 361 F.3d 1005, 1015 (7th Cir. 2004); United States v. Banks, 340 F.3d 683, 684-65 (8th Cir. 2003); United States v. Ochao, 311 F.3d 1133, 1134-36 (9th Cir. 2002); United States v. Mendez-Zamora, 296 F.3d 1013, 1020 (10th Cir. 2002); United States v. Ortiz, 318 F.3d 1030, 1039 (11th Cir. 2003); United States v. Pettigrew, 346 F.3d 1139, 1147 n.18 (D.C. Cir. 2003).

fundamental principles limiting habeas review. The Supreme Court has repeatedly emphasized that the habeas remedy is extraordinary, and will not be allowed to replace the appeals process, lest the interest in finality in criminal prosecutions be thwarted. See, e.g., Engle v. Isaac, 456 U.S. 107, 126 (1982); United States v. Addonizio, 442 U.S. 178, 184 (1979). The procedural default analysis in this case is consistent with this principle. The defendant was convicted and sentenced in a proceeding in which all prevailing norms and constitutional rules were followed, and he was represented by able counsel. Subsequent changes in the law which do not expose a miscarriage of justice should not be recognized, given the overriding demand for finality in the prosecution of criminal offenders. Id.

3. <u>Actual innocence</u>.

Finally, the petitioner has not claimed and cannot show actual innocence. Bousley, 523 U.S. at 62. The actual innocence exception is "quite narrow" and "reserved for the extraordinary cases of 'fundamentally unjust incarceration.'" Awon v. United States, 308 F.3d 133, 144 (1st Cir. 2002). Only in Sawyer v. Whitley, 505 U.S. 333 (1992), did the Court apply the "actual innocence" concept to waive procedural default of a sentencing issue. In that case, however, the sentencing issue involved capital punishment. The concept does not apply to the guideline issue raised in the petition. See United States v.

Richards, 5 F.3d 1369, 1371 (10th Cir. 1993) (holding that a "person cannot be actually innocent of a noncapital sentence").

### III. Blakely does not affect Fusco's sentence

In Blakely v. Washington, the Court ruled that the Washington State courts could not constitutionally rely on judicial findings to impose a sentence above the "standard range" set forth in the statute. The Blakely decision does not impact Fusco's sentence.

First, unlike Blakely, the statutes under which Fusco was charged provided notice of the statutory maximum he faced upon conviction. By contrast, Blakely involved a legislative scheme which created two distinct statutory maximums.

The Sixth Amendment right to trial by jury is fully protected when, as in the instant case, there must be a jury finding beyond a reasonable doubt on the facts that establish the legislatively prescribed maximum punishment to which a defendant is exposed. As Justice Scalia said in Apprendi v. New Jersey:

> I think it not unfair to tell a prospective felon that if he commits his contemplated crime he is exposing himself to a jail sentence of 30 years - - and that if, upon conviction, he gets anything less than that he may thank the mercy of a tenderhearted judge. . . Will there be disparities? Of course. But the criminal will never get _more_ punishment than he bargained for when he did the crime, and his guilt of the crime (and hence the length of the sentence to which he is exposed) will be determined beyond a reasonable doubt by the unanimous vote of 12 of his fellow citizens.

530 U.S. at 498 (Scalia, J., concurring) (emphasis in original).

Second, Blakely did not invalidate the federal Sentencing Guidelines or hold that its rule applies to the Guidelines. Id. at 2538 n. 9. Indeed, it expressly refrained from such a holding, stating "[t]he Federal Guidelines are not before us, and we express no opinion on them." Id.; see also Apprendi, 530 U.S. at 497 n.21 (Court expressed no view on the guidelines beyond "what this Court has already held.)" Until the Supreme Court resolves the issue, this court should adhere to Supreme Court and First Circuit precedent.[13] See State Oil Co. v. Khan, 522 U.S. 3, 20 (1997) ("it is [the Supreme Court's] prerogative alone to overrule one of its precedents"); Agostini v. Felton, 521 U.S. 203, 237 (1997) (courts of appeals must leave to "this Court the prerogative of overruling its own decisions," even if such a decision "appears to rest on reasons rejected in some other line of decisions") (quotations, citations omitted). Indeed, the First Circuit has acknowledged the obligation to follow Supreme Court precedent even when that precedent may appear to be

---

[13] A definitive answer is expected soon. On August 2, 2004, the Supreme Court granted certiorari in United States v. Booker, No. 04-104, and United States v. Fanfan, No. 04-105, and will to decide whether imposing an enhanced sentence under the Sentencing Guidelines based on the sentencing judge's determination of a fact violates Sixth Amendment, and if so, whether that renders the Sentencing Guidelines as a whole inapplicable. Argument was conducted on October 4, 2004.

undermined by subsequent Supreme Court decisions. <u>Figueroa</u> v. <u>Rivera</u>, 147 F.3d 77, 81 (1st Cir. 1998) (noting that the Supreme Court has "admonished the lower federal courts to follow its directly applicable precedent, even if that precedent appears weakened by pronouncements in its subsequent decisions").

IV. **If the Court holds that <u>Blakely</u> precludes application of the Guidelines, the sentence should be imposed within the statutory range with due regard to the sentences prescribed by the Guidelines for similar offenses and offenders**

Even if Fusco could overcome the major procedural hurdles to his petition and even if the court found that <u>Blakely</u> applied to his sentence, the provisions of the current sentencing system that would be unconstitutional are not severable from the remainder of the Guidelines. See <u>Minnesota</u> v. <u>Mille Lacs Band of Chippewa Indians</u>, 526 U.S. 172, 191 (1999) ("The inquiry into whether a statute is severable is essentially an inquiry into legislative intent."). A patchwork approach, where the court applies the guidelines but without the enhancements contemplated the scheme, would result in absurd results not contemplated by Congress.

Therefore, if the court determines that the guidelines could not constitutionally be applied in this case, the court should sentence the defendant between the minimum and maximum sentences prescribed by statute, finding whatever facts it believes necessary to impose a sentence within that range. The guidelines, however, should be consulted for guidance. <u>See</u> 18

19

U.S.C. 3553(b) (referring the court to the guidelines for guidance in the absence of an applicable sentencing guideline).

Application of those principles would likely result in the same 33-month sentence the court imposed at the September 19, 2003, sentencing hearing.

## CONCLUSION

For the reasons stated above, Fusco's motion pursuant to 28 U.S.C. § 2255 should be denied.

> Respectfully submitted,
>
> MICHAEL J. SULLIVAN
> United States Attorney

By: _/s/ Karen L. Goodwin_
Karen L. Goodwin
Assistant U.S. Attorney

Dated: December 22, 2004

## CERTIFICATE OF SERVICE

Hampden, ss.              Springfield, Massachusetts
                          December 22, 2004

I, Karen L. Goodwin, Assistant U.S. Attorney, do hereby certify that I have served a copy of the foregoing by mail on Emilio Fusco, 02689-748, P.O. Box 9006, Raybrook, NY 12977.

_/s/ Karen L. Goodwin_
Karen L. Goodwin
Assistant U.S. Attorney