UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| EMILIO FUSCO,<br>    Petitioner, | : | |
| | : | Civ. No. 04-30193 (MAP) |
| v. | : | TRAVERSE TO THE GOVERNMENT'S |
| UNITED STATES OF AMERICA,<br>    Respondent, | : | OPPOSITION TO A MOTION PURSUANT<br>TO 28 U.S.C. § 2255. |
| | : | |

Emilio Fusco, the petitioner in the above captioned proceeding, affirms under the penalties of perjury the following:

This brief is submitted in reply to the Memorandum of Law filed by the Government in response to Movant's petition made pursuant to 28 U.S.C. § 2255.

The Government has raised four arguments in opposition to the Movant's application. This Reply addresses each of the claims raised by the Government and demonstrates, with authority, why each of those claims should be rejected and why the relief sought by the Movant should be granted.

It must be borne in mind that the primary objective of our opening brief, and this reply, is to persuade the Court that the Movant is entitled to <u>resentencing</u> on the significant assertions contained in his 2255 application. We certainly believe that the Movant has made out a sufficient showing to, at the very least, warrant a <u>hearing</u> as to the serious <u>Constitutional</u> claims he had made.

## PROCEDURAL HISTORY

On September 20, 2004, Emilio Fusco filed a motion for a writ of habeas corpus, pursuant to 28 U.S.C. § 2255, seeking to set aside and/or correct his sentence based primarily, on two

1

grounds: (1) that the "[M]ovant's plea waivers were not made knowingly, voluntarily, and were based upon the erroneous advise of counsel, in violation of "his" Sixth Amendment right to effective assistance"; and (2) that the "[M]ovant's sentence should be vacated because there has been an intervening change in the law concerning the burden of proof bearing on an enhancement of a sentence" Blakely v. Washington, 124 S.Ct. 2531 (2004).

Fusco is presently incarcerated at F.C.I. Raybrook, in New York State. Proof of service on the office of the United States Attorney for the District of Massachusetts, Exhibits thereto, Memorandum of Law, in connecion with Emilio Fusco's petition pursuant to 28 U.S.C. § 2255, was filed in this Court.

On December 26, 2004, the Movant received a copy of the Government's brief in Opposition to the Movant's petition. This Memorandum of Law is submitted in Reply.

## FACTS OF THIS CASE

A sitting Federal grand jury for the District of Massachusetts indicted the Movant and seven others on racketeering, and other related charges. On June 4, 2003, the Movant pled guilty to racketeering, and money laundering charges pursuant to the plea agreement. Specifically, the Movant pled guilty to Count One of a Superceding Information, and Count 24 of the Superceding Indictment. The plea agreement contained a Waiver of Rights to Bring Collateral Challenge ("Agreement" ¶7); however, that agreement also contained a "disclaimer" (Defendant's Waiver of rights to bring collateral challenges shall not apply to challenges on new legal principles in First Circuit or Supreme Court cases decided after the date of this Agreement which are held by the First Circuit or Supreme Court to have retroactive effect).

On September 19, 2003, the Court sentenced Fusco to 33 months of imprisonment to be followed by three years of supervised release. The Movant did not file a direct appeal, and the Government concedes that the petition was timely filed.

I. THE GOVERNMENT'S CLAIM THAT BLAKELY DOES NOT APPLY RETROACTIVELY IN THIS CASE IS SPECIOUS, IMPROVIDENT AND PRESUMES WHAT THE SUPREME COURT HAS NOT YET STATED.

The Government claims that the instant petition lacks merit because the petitioner's conviction was final when the Supreme Court decided the Blakely case. Although it is conceded that the Movant's conviction became final prior to the Supreme Court's decision in Blakely, it is asserted that this Court can make the determination on it's own, whether Blakely applies retroactively absent the Supreme Court's express finding, United States v. Lopez, 248 F.3d 427, 431-32 (5th Cir. 2001) (retroactivity must be declared but not necessarily by the Supreme Court); Ashley v. United States, 266 F.3d 671, 674-75 (7th Cir. 2001) (interpreting § 2255(3) as not limiting retroactivity decisions to the Supreme Court).

Additionally, in In re Holladay, 331 F.3d 1169, 1172-72 (11th Cir. 2003), the Court held that, "[I]n Tyler v. Cain, Justice O'Conner explained in a concurring opinion that a new rule of constitutional law is made retroactive not only through an express pronouncement of retroactivity, but also 'through multiple holdings that logically dictate the retroactivity of the new rule', 533 U.S. 656 (2001)"; Walker v. True, 2003 U.S. App. LEXIS 8557 at *36 (4th Cir. May 26, 2003); In re Turner, 267 F.3d 225, 228-29 (3d Cir 2001) (Justice O'Conner, who supplied the fifth vote for the

majority, wrote a concurring opinion, and explains that it is possible for the Court to 'make' a case retroactive on collateral review without *explicitly* so stating, as long as the Court's holding 'logically permit no other conclusion than that the rule is retroactive"); Forbes v. United States, 262 F.3d 143, 145 n.4 (2d Cir. 2001) ("Justice O'Conner's concurrence in Tyler (necessary to achieve a majority in that case) admits of the possibility that, in limited circumstances, a new rule could be 'made retroactive' upon it's pronouncement without the Court expressly stating as much, so long as the decision states that the new rule possesses attributes that in fact qualify it for retroactivity under Teague v. Lane, 489 U.S. 288 (1989).")

As the government asserts, "[T]he principle of non-retroactivity is subject to only two exceptions." First, a new rule should be applied to cases on collateral review if it places "certain kinds of primary, private individual conduct beyond the power of criminal law-making authority to proscribe." Second, a new rule should be applied retroactively if it implicates fundamental fairness in a way that seriously affects the *likelihood* of an accurate conviction. Id. at 312-313

"The Teague inquiry is conducted in three steps." Kapral v. United States, 166 F.3d 565, 572 (3d Cir. 1999); Caspari v. Bohlen, 510 U.S. 383, 389 (1994). The first step is to determine whether the defendant's conviction became final prior to the new decision he invokes. If not, the defendant is entitled to the benefit of the decision. If so, the second step is to determine whether the decision adopts a new rule. If not, the defendant is entitled to

4

the benefit of the decision. If the decision did adopt a new rule, the third step is to determine whether one of the two narrow exceptions applies. If either exception applies, the defendant is entitled to the benefit of the new decision.

Here, it is conceded that Fusco's conviction became final prior to June 24, 2004, the date of the Blakely decision. Thus, the inquiry moves to the second step determination of whether Blakely adopte a new rule.

A "new rule" is one that was not dictated by precedent existing at the time the defendant's conviction became final. Teague v. Lane, 489 U.S. at 301 ("a rule may be new even though it finds general support in prior cases"); Sawyer v. Smith, 497 U.S. 227, 234 (1990). If a reasonable jurist would not have felt compelled to adopt the rule subsequently in Blakely, it is a new rule. As both parties agree, Blakely adopted a new rule.

Moreover, the government correctly holds that Blakely constitutes a new rule of procedure. Thus, the inquiry turns to the final question: whether it is subject to either of the two exceptions outlined in Teague for new substantive rules which change the definition of criminal conduct, or for "watershed" rules addressed to matters of fundamental fairness. The answer to that inquiry is "yes".

A. Supreme Court Precedent Does Not Address the Sixth Amendment Issues of Blakely.

To be sure, the Guidelines have previously withstood significant Supreme Court scrutiny and have come out on the winning side. See, e.g., Mistretta v. United States, 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989); Stinson v. United States, 508

5

U.S. 36, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993); Witte v. United States, 515 U.S. 389, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995); Edwards v. United States, 523 U.S. 511, 118 S.Ct. 1475, 140 L.Ed.2d 703 (1998); United States v. Watts, 519 U.S. 148, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997). The Guidelines have not however, faced a Sixth Amendment right to jury challenge such as the one mounted in Blakely against the Washington state scheme.[1]

In United States v. Booker, 375 F.3d 508, 513-14 (cert. granted, oral argument were held on October 4, 2004 before the Supreme Court in conjunction with United States v. Fan Fan, 03-47-P-H), the Court agreed that the Supreme Court has not upheld the Guidelines against Sixth Amendment challenges in Edwards or any other pre-Blakely case. United States v. Pineiro, 377 F.3d 464, 470-73 (5th Cir. 2004) (admitting that Supreme Court precedent does

---

[1] The Government argues in their Opposition at Point III, that Supreme Court precedent prevents this Court from finding that Blakely is applicable to the Federal Sentencing Guidelines. As other Courts however have pointed out, none of the prior cases have ruled on the dicrete issue now before this Court. Mistretta held, under separation of powers and delegation of legislative authority challenges, that the Sentencing Commission was not improper. 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714. Stinson held that the commentary in the Guidelines manual was binding and authoritative. 508 U.S. 36, 113 S.Ct. 1913, 123 L.Ed.2d 598. In Witte, the Court found that a Double Jeopardy Clause was not implicated by judge's consideration of relevant conduct in determining a sentence "within a legislatively authorized punishment range ..." 515 U.S. at 406, 115 S.Ct. 2199, and in Edwards, it held that the Guidelines require the sentencing judge to determine the amount and type of drugs involved in a drug conspiracy but not in the face of a Sixth Amendment or right to jury trial challenge. 513 U.S. 511, 118 S.Ct. 1475, 140 L.Ed.2d 703. Watts held that a sentencing court may consider conduct underlying an acquitted charge in a sentence, so long as the conduct was proven by a preponderance of the evidence. 519 U.S. 148, 117 S.Ct. 633, 136 L.Ed.2d 554.

address Sixth Amendment trial by jury issues); United States v. Croxford, 324 F.Supp.2d 1255, 1260, WL 1551564 at *4 (D.Utah July 12, 2004) ("Croxford II") ("In sum, none of the Supreme Court cases on the Federal Sentencing Guidelines even discuss-much less decide the Sixth Amendment jury trial issue presented here")

The second exception outlined in Teague addresses whether the new rule affects "fundamental fairness", meaning that it "affected the outcome of the district court proceedings". United States v. Olano, 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). The defendant bears the burden of demonstrating "prejudice". Fusco was sentenced to 33 months of imprisonment, rather than a term consistent with the analysis outlined in the original pleading (Memorandum, Page 5, ¶5(a)). The Movant's analysis relies on solely the Base Offense Level, minus any role-adjustments. "[T]hus, an offense level 16 at criminal history category I, exposes the Movant to a term of from 21-27 months of imprisonment" (Memorandum, Page 5). As such, the sentencing error in this case increased Fusco's sentence by 30 percent of the maximum sentence he would have received in the absence of that error. This increase is prejudicial and affects the fundamental fairness of judiciary proceedings. United States v. Thomas, 274 F.3d at 666 ("It is beyond cavil that imprisonment for an additinal amount of time...constitutes prejudice."); see also Nordby, 225 F.3d at 1061 (holding that significant increase in sentence constitutes "plain error", thereby implicitly affecting the defendant's substantial rights); United States v. Dale, 178 F.3d at 434 (same); Newman, 817 F.2d at 637 n.3 (same).

Additionally, the Movant relies upon Justice O'Conner's dissent in Blakely, ("The Court ignores the havoc it is about to wreak on trial courts across the country") 124 S.Ct. at 2549, as well as Justice O'Conner's litany, ("Today's decision casts constitutional doubt over them all, and in doing so, threatens an untold number of criminal judgments. Every sentence imposed under such guidelines in cases currently under direct appeal is in jeopardy. And despite the fact that we hold in Shiro v. Summerlin, 124 S.Ct. 2519 (2004) that Ring v. Arizona, 526 U.S. 584 (2002) (and a fortiori Apprendi) does not apply retroactively on habeas review, all criminal sentences imposed under federal and state guidelines since Apprendi was decided in 2000 arguably remain open to collateral attack").

The government also misses the mark, and overlooks three additioal considerations why Blakely meets the second exception under Teague. First, the factfinder's role in determining the applicability of aggravating factors in, for instance, a federal death case (18 U.S.C. § 1121 (Killing persons aiding Federal Investigations or State Correction Officers)) is a special role that can involve, not simply finding the brute facts, but also the making of death-related, community based value judgments. The three aggravating factors in this for instance, requires the fact finder to decide whether; (A) while the victim is engaged in the performance of his duties; (B) because of the performance of the victim's official duties; or (C) because of the victim's status as a public servant (U.S. Annotated, 2004 ed.); and although Fusco's case is not a death-penalty related case, the implications of Blakely remain.

Second, Teague's basic purpose strongly favors retroactive appplication of Blakely's rule. Teague's retroactivity principles reflect the Court's effort to balance competing considerations. See 489 U.S. at 309-313; Mackay v. United States, 401 U.S. 667, 675 (1971) (Harlan, J., concurring in two judgments and dissenting in one); Desist v. United States, 394 U.S. 244, 2556 (1969) (Harlan, J., dissenting). On the one hand, interests related to certain of the Great Writ's basic objectives-protecting the innocent against erroneous conviction or punishment and assuring fundamentally fair procedures--favor applying the new procedural rule retroactively. Teague, supra, at 312-313; Mackay, 401 U.S. at 693-94. So too does the legal system's committment to "equal justice"--i.e., to "assur[ing] a uniformity of ultimate treatment among prisoners." Id. at 689.

Other examples of death-related offenses are, 18 U.S.C. § 1111(b) (requiring a judicial finding of premeditation, or committed in the perpetration of, or attempt to perpetrate, any arson, escape, murder, kidnapping, treason, espionage, sabatoge, aggravated sexual abuse, burglary, or robbery); 18 U.S.C. § 1512 (tampering with a witness, victim, or an informant) (six aggravating factors); 18 U.S.C. § 1958 (Use of interstate commerce facilities in the commission of murder for hire) (same).[2]

---

[2] Obviously, the Government would argue, on Sur Reply, that Fusco's offense conduct does not implicate anything near a death, or even, life related sentence and this is conceded, however, that logic is flawed in that the Movant argues for retroactivity on collateral review for all similarly situated prisoners who have had the right-to-jury role usurped by a district court's preponderance of evidence standard applicable until Blakely.

In conclusion, Fusco is not precluded from raising a claim under <u>Blakely</u>, notwithstanding the Supreme Court's silence as to the retroactivity aspect. As pointed out herein, there has been extensive litigation as to whether a Circuit or District Court may apply a new rule of law. It is respectfully urged that this Court find <u>Blakely</u> retroactive on collateral review and allow this Movant's claims to be heard on the merits. <u>Alternatively</u>, the Movant suggests that this Court hold the adjudication of this motion in abeyance until the Supreme Court decides <u>Fan Fan</u> and <u>Booker</u>. According to the Supreme's Website, (U.S.SupremeCourt.com), the Court is in session for the Winter Term on January 11, 2005. It is suggested that the Court will issue their decision shortly thereafter.

II. **THE MOVANT DID NOT HAVE TO FILE A DIRECT APPEAL OF HIS SENTENCE.**

The government's second argument is similarly unavailing. Although a sentencing guideline violation, standing alone, is not automatically a basis for relief through a motion to vacate sentence; however, if such a claim is repackaged as one of ineffective assistance of counsel, it becomes a constitutional claim cognizable in a motion to vacate. <u>Cofske</u> v. <u>U.S.</u>, 290 F.3d 437 (1st Cir. 2002) (collecting cases). Here, Fusco did not file a direct appeal. The government's reliance on <u>Derman</u> v. <u>United States</u> 298 F.3d 34 (1st Cir. 2002) is simply wrong. <u>Derman</u> elected for

---

3/ The government also cites <u>Jenkins</u>, 333 F.3d 151 (3d Cir. 2003); <u>Sanders</u>, 247 F.3d 139 (4th Cir. 2001); <u>Smith</u>, 241 F.3d 546 (7th Cir. 2001); <u>Moss</u>, 252 F.3d 993 (8th Cir. 2001); <u>Bailey</u>, 286 F.3d 1219 (10th Cir. 2002); however, each of these cases are factually distinct. Each of these defendant's proceeded to trial; and filed direct appeals failing to raise an <u>Apprendi</u> styled claim;

jury trial and was convicted on all Counts alleged. On Direct, he did not raise an <u>Apprendi</u> styled claim. Derman's sentence fell below the Statutory Maximum penalty proscribed, and was within the Guidelines applicable at the time. Subsequently, <u>Apprendi</u> was decided, and ruled explicitly by the Supreme Court not to have retroactive effect on collateral review. <u>Derman's</u> petition for habeas relief was denied.

In this case, the Movant not only filed a substantive <u>Blakely</u> claim, but also contested that counsel was ineffective (Ground One) (Mem. at Page 3) in that counsel failed to contest the charging instrument's negation of the aggravating factors used to enhance his sentencing exposure. (Mem. at Page 12). AS such, Fusco more than amply meets the exception to procedural default here.

Additionally, Court's have excused the procedural default in, for instance, <u>Lanier</u> v. <u>U.S.</u>, 220 F.3d 833 (7th Cir. 2000) (Intervening decision of Supreme Court in <u>Rutledge</u> subsequent to direct appeal, provided reasonable cause to excuse defendant's failure to raise claim on direct appeal); <u>Waldemer</u> v. <u>U.S.</u>, 98 F.3d 306, republished at 106 F.3d 729 (7th Cir. 1996) (Good cause existed, subsequent to Supreme Court's decision in <u>Gaudin</u>, that Sixth Amendment requires every element of offense to be submitted to jury); <u>Ferrell</u> v. <u>U.S.</u>, 963 F.Supp. 615 (E:D.Mich. 1997) (Intervening decision in <u>Bailey</u>, which applied retroactively, provided good cause for untimely assertion); and <u>Johnson</u> v. <u>U.S.</u>,

---

Continued from 3/
subsequent to the Supreme Court's decision in <u>Apprendi</u>, and after the Court ruled that this holding is <u>not retroactive</u> on collateral review, these individual defendant's filed motions to vacate based on <u>Apprendi</u> purposes. Additionally, a review of each of the cases relied upon by the Government, reveals that none received a sentence exceeding the Statutory Maximum authorized by Congress.

In conclusion, Fusco's failure to previous raise a <u>Blakely</u> styled claim may be excused.

### III. BLAKELY DOES AFFECT FUSCO'S SENTENCE

For constitutional purposes, the Guidelines are indistinguishable from the Washington state statutory scheme at issue in <u>Blakely</u>. Justice Scalia wrote, in a now oft-quoted key line of <u>Blakely</u>:

> the 'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose <u>solely on the basis of the facts reflected in the jury's verdict or admitted by the defendant</u>. In other words, the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without finding additional facts. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts 'which the law makes essential to the punishment', and the judge exceeds his proper authority. 124 S.Ct. at 2537 (citations omitted).

Some Courts, including the Government in this case, suggest that Justice Scalia's use of the phrase 'statutory maximum' is literal and indicates that the Court did not intend <u>Blakely</u>-which involves a state statutory scheme enacted by a legislature-to apply to the Guidelines, which are rules promulgated by an agency. (See Government Mem. at Page 17); <u>United States</u> v. <u>Penaranda</u>, 375 F.3d 238, 239-40 (2d Cir. 2004) ("A common characteristic of <u>Apprendi</u>, <u>Ring</u>, and <u>Blakely</u>, is that a state legislature had made

12

the critical decisions setting the boundaries that the Court held the sentencing judge was not permitted to exceed without either a jury's fact-finding or a defendant's admission"). As others have opined, however, distinguishing the Guidelines from the state statutory scheme in <u>Blakely</u> in this manner puts form over substance. Looking, as we must, at the effect of the regime rather than it's label, it is clear that the Guidelines function as the equivalent of statutory directives and therefore are indistinguishable in any relevant way from the Washington state statutory scheme addressed in <u>Blakely</u>. See <u>Blakely</u>, 124 S.Ct. at 2550 (O'Conner, J., dissenting) ("The structure of the Federal Guidelines likewise does not, as the Government half-heartedly suggests, provide any grounds for distinction. Washington's scheme is almost identical to the upward departure regime established by 18 U.S.C. § 3553(b) and implemented in USSG § 5K2.0. If anything, the structural differences that do exist make the Federal Guideline more vulnerable to attack.") (internal citations omitted); <u>id.</u> at 2561 (Breyer, J., dissenting) ("Perhaps the Court will distinguish the Federal Sentencing Guidelines but I am uncertain how."); <u>Einstman</u>, at 375 ("there is very little difference between the two sytems, and what difference there is does not bode well for the Constitutionality of the Guidelines"); <u>Croxford II</u>, at 1261-62; <u>Shamblin</u>, at 764-66. Thus despite the linguistic rubric under which courts have been operating for years, the "Guidelines" are not in fact intended simply to "guide" but rather bind judges in a way only a rule or statute can. See <u>Croxford II</u>, at 1261-62 ("In other words, the Federal Sentencing Guidelines are 'guidelines' in name only.") The Guidelines therefore operate as a statutory mandate and

13

they are not distinguishable from the Washington state scheme on this formalistic ground.

In this case, as explained in the main brief, the Movant's "Base Offense Level" as to Count One of the superceding information was 19, less the enhancements. Specifically, the Pre-Sentence Report indicated that sections 2E1.1(a)(2), 2E2.1(a), 2E3.1(a) and 3B1.1(c) applied; however, these elements were not charged within the information. Similarly, the "Base Offense Level" as to Count twenty-four of the superceding indictment was 14, less enhancements. The Pre-Sentence Report indicated here that sections 2S1.1(a)(1), and (b)(2)(B) applied; however, as the Guidelines in this writer's opinion are unconstitutional in their entirety the Movant's sentence is illegal.

    1. Can Courts Harmonize <u>Blakely</u> with the Guidelines, or Are They Unconstitutional in Their Entirety?

Having discussed the relationship between <u>Blakely</u> and the Federal Guidelines, the next question becomes: is the entire Guidelines scheme unconstitutional, or may the unconstitutional enhancement aspects be severed? For the reasons states in <u>United States v. King</u>, 328 F.Supp.2d 1276 (M.D.Fla. 2004); <u>Einstman</u> and <u>Croxford</u>, the Movant respectfully urges this Court to find the Guidelines to be a non-severable whole. <u>Einstman</u>, at 379-80; <u>Croxford I</u>, at 1244-45. Furthermore, because the Guidelines are not severable, "the unconstitutionality of the provisions concerning the judicial fact-finding of sentencing enhancements necessarily means that the entire 'Guidelines' scheme fails." <u>Einstman</u>, at 379-80. In the Movant's view, the unavoidable result of finding the Guidelines Unconstitutional in their entirety is a return to an indeterminate sentencing system. In this regard, the Movant urges

this Court to follow and adopt the approach of the Sixth Circuit. See Montgomery, 2004 WL 1562904. In that case, the Sixth Circuit interpreted Blakely as holding that "determinate" or fixed rule-bound sentencing, like the Federal Sentencing Commission's system, which increases sentences based on a requirement of judicial fact-finding instead of jury fact-finding, violates the trial-by-jury requirement of the Sixth Amendment.

See also, Einstman at 381 (reverting to an indeterminate sentencing scheme after finding the Guidelines unconstitutional). As the Sixth Circuit noted, the majority opinion in Blakely "made it clear that an indeterminate sentencing system administered by judges whose hand was not tied, as was the case prior to the imposition of the present system in 1987 by the Federal Sentencing Commission, does not violate the Sixth Amendment.") 2004 WL 1562904 at *2.

IV. IF THE COURT DOES NOT HOLD THIS PETITION IN ABEYANCE, AND RULES THAT THE GUIDELINES ARE UNCONSTITUTIONAL AS A WHOLE, A SENTENCING HEARING MUST BE HELD TO DETERMINE THE APPROPRIATE PENALTY.

The government in their Point IV seems to completely overlook or disregard the majority opinion in Blakely. Essentially, the government wants their cake, and eat it as well. Their alternative argument concerns the application of the Statute itself which as Blakely expressely teaches us that for sentencing purposes, "the statutory maximum is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." (Scalia, J.), 124 S.Ct. 2537. The various Courts misapplied what the Apprendi Court meant. In scores of decisions subsequent to Apprendi, all defendants' were denied relief so long as their sentenced fell below the Statutory

15

Maximum. Justice Scalia now clarified what the Sixth Amendment requirement calls for in criminal trials. For purposes of this Movant, a re-sentencing hearing will be necessary to comport with the decision of <u>Blakely</u> and it's progeny. Should this Court follow the Movant's assertions. However, alternatively, it is respectfully requested that the adjudication of this petition be held in abeyance until the Supreme Court returns for the 2005 Winter Term on January 11, 2005.[4/]

December 28, 2004

Respectfully,

*Emilio Fusco*
Emilio Fusco
02689-748
FCI Raybrook
P.O. Box 9006
Raybrook, NY
12977

---

[4/] In the Main Brief, the Movant asserted that the Waiver Provision of the Plea Agreement should not be held attributable to him, by virtue of counsel's erroneous advise; however, as the Plea Provision also contains a "Disclaimer" in ¶7 concerning the availability of collateral relief based on Intervening Changes in Law, this issue is withdrawn from consideration. The main thrust of this Reply Brief is to clarify the exact meaning of the Main Brief, and to prove the application of <u>Blakely</u> in this case.

The petitioner is <u>not</u> withdrawing the claim of ineffective assistance of counsel, and asserts that by the Government's silence as to this issue, they effectively concede to the Movant's claim. U.S. v. <u>Warner</u>, 23 F.3d 287 (10th Cir. 1994); <u>U.S.</u> v. <u>Gaudet</u>, 81 F.3d 585 (5th Cir. 1996).

Emilio Fusco
Fed.Reg.No. 02689-748
FCI Raybrook
P.O. Box 9006
Raybrook, New York
12977

United States District Court
District of Massachusetts
Federal Building, Fifth Floor
1550 Main Street
Springfield, Massachusetts
01103-1422

December 28, 2004

Re: United State v. Emilio Fusco
    Civil No. 04-30193-MAP

Dear Clerk:

In relation to the above referenced proceeding, I received a copy of the Government Reply Brief to my filed section 2255 petition. Enclosed please find a Traverse to this latest filing. Please Docket the same. I have served via the United States Postal Service, Certified Mail, a true copy of the enclosed, the United States Attorney's Office located at 1550 Main Street, Springfield, Massachusetts 01103.

Respectfully,

*Emilio Fusco* (signature)
Emilio Fusco

The following statement is made under the penalties of perjury.


c.c. AUSA
    District of Massachusetts

    File